UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

  - against-

TWO HUNDRED SEVENTY-TWO
THOUSAND DOLLARS AND NO
CENTS ($272,000), MORE OR LESS,
IN UNITED STATES CURRENCY
SEIZED FROM RESIDENCE OF
YUAHUA ZHU AT 14 WIMBLEDON
COURT, JERICHO, NEW YORK,
ON OR ABOUT JUNE 6, 2016, AND
ALL PROCEEDS TRACEABLE
THERETO,

                Defendants in *rem*.

-------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**
1:16-cv-06564 (AMD)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ FEB 16 2018 ★
BROOKLYN OFFICE

ANN M. DONNELLY, United States District Judge:

## INTRODUCTION

On November 23, 2017, the United States government filed a verified complaint for civil forfeiture in *rem* against $272,000 in funds. On June 6, 2016, the government seized the funds from claimant Yuhua Zhu's residence pursuant to a warrant issued by this Court. Zhu contests the forfeiture, and now moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rules G(5)(b) and G(8)(b)(i) of the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules"). For the reasons that follow, the motion is denied.

1

## BACKGROUND

1. **Factual Background**

On September 26, 2014, the claimant, Yuhua Zhu, was convicted in New York State Supreme Court, Nassau County, of Attempted Reckless Endangerment in the First Degree, Assault in the Third Degree, and Driving While Intoxicated. (Compl., ECF No. 1, ¶¶ 6-7.) She was sentenced to six months in jail, followed by five years' probation. (*Id.*) Conditions of her probation included that she abstain from alcohol, install a breathalyzer on any car she used, and submit to warrantless searches by probation officers of her person, property, residence, or any vehicle under her control. (*Id.* ¶¶ 8, 10.)

On June 3, 2016, Nassau County probation officers received a signal from the breathalyzer in the claimant's car, which indicated that she attempted to start the car while under the influence of alcohol. (*Id.* ¶ 12.) The officers went to the claimant's residence at 14 Wimbledon Court in Jericho, New York. (*Id.* ¶ 13.) During the search that followed, the officers found approximately $300,000 in U.S. currency in the claimant's bedroom; the cash—in denominations of $50 and $100 bills—was bundled together in plastic bags, which were on top of the nightstand, as well as in the drawers. (*Id.* ¶ 14.) The officers also found check books and bank records showing wire transfers of substantial amounts of money from banks in the United States to financial institutions in China, federal tax returns indicating a reported loss of $8,219 in 2014 and $5,322 in income in 2015, and a closing statement for the claimant's house at 14 Wimbledon Court that showed the house was purchased from a third party for $650,000. (*Id.* ¶¶ 14-18.)

The claimant told the officers that the cash belonged to her friend, Wayne Zhou. ((*Id.* ¶ 19.) According to the claimant, Zhou told her to travel to Flushing, New York, to meet a man

whom she had never met and whose name she did not know. (*Id.*) The man gave her the money, and the claimant took it back to her house. (*Id.* ¶ 22.)[1]

The probation officers reported their findings to the United States Drug Enforcement Administration and the Nassau County Asset Forfeiture Unit. (*Id.* ¶ 23.) Three days later, on June 6, 2016, a team of probation officers, Nassau County Asset Forfeiture Unit officers, and DEA agents searched the claimant's house. (*Id.* ¶¶ 24, 32.) During the search, the officers found the bundles of cash; some of the bundles were in the claimant's nightstand, and the others were concealed in a light fixture in the bathroom ceiling. (*Id.* ¶¶ 26-28.) The DEA's drug-sniffing dog reacted to the cash and the nightstand where the money was stored, indicating the presence of narcotics. (*Id.* ¶ 33.) The claimant told the officers that she was holding the money for her friend, Wayne Zhou, who she believed was in China. (*Id.* ¶¶ 29, 31.) She did not know Zhou's address, telephone number, or any other identifying information about him. (*Id.* ¶ 29.) The DEA agents seized the money but did not arrest the claimant. (*Id.* ¶ 34.)

## 2. Procedural History

On November 23, 2016, the United States government filed a verified complaint in *rem*, alleging that the cash—the Defendant Funds—was subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(1), and 21 U.S.C. § 881(a)(6), as money furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or monies used or intended to be used to facilitate a violation of the Controlled Substances Act. (*Id.* ¶¶ 38, 43.) The claimant filed a Statement of Claim to the Defendant Funds on January 25, 2017, alleging that she "possessed $250,000 of the Defendant Property as a bailee to Wayne Zhou,

---

[1] The claimant signed a statement including these facts. (*Id.* ¶ 19.)

whom [she] understand[s] earned these monies legitimately and entrusted them to [her] to help him purchase local real estate." (ECF No. 10, ¶¶ 1, 4.) She also alleged, for the first time, that she "owned the remaining $22,000, which [she] kept in cash without any intent to break any laws of the United States whatsoever." (*Id.*) The claimant contends that she and Zhou are "innocent owners" of the Defendant Funds pursuant to 18 U.S.C § 983(d). (*Id.* ¶ 5.)[2]

On December 21, 2017, pursuant to Rule G(6) of the Supplemental Rules, the government served the claimant with Special Interrogatories. (ECF No. 16-1.) The claimant served her responses to the Special Interrogatories on or about February 15, 2017. (ECF No. 16-2.)

On March 14, 2017, the claimant filed this Rule 12(b)(6) motion to dismiss. (ECF Nos. 15, 15-1.) While this motion was pending, the government moved to compel further responses to its Special Interrogatories, and for permission to hold the claimant's motion to dismiss in abeyance until after the motion to compel was decided. (ECF No. 16.) On October 26, 2017, I granted the government's motion to compel in part and denied it in part, and granted the government's request to stay its response to the claimant's motion until after she responded to the Special Interrogatories. (ECF No. 20.) The claimant served the government with supplemental responses on November 30, 2017. (ECF No. 23-4.) The government filed its opposition to the motion to dismiss on January 9, 2018, and the claimant filed her reply on January 23, 2018. (ECF Nos. 23, 24.)

## STANDARD OF REVIEW

---

[2] On March 11, 2017, Wayne Zhou also filed a Statement of Claim, alleging he is the owner of $250,000 of the Defendant Funds, and that he and Zhu are "innocent owners" of the seized property pursuant to 18 U.S.C § 983(d). (ECF No. 13, ¶ 12.)

4

Forfeiture actions are subject to a slightly different pleading standard than typical lawsuits. Motions to dismiss in such actions are governed by the Supplemental Rules and also by the Federal Rules of Civil Procedure to the extent they do not conflict with the Supplemental Rules. *See In re 650 Fifth Ave. and Related Properties*, 777 F. Supp. 2d 529, 541–42 (S.D.N.Y. 2011); *U.S. v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 249 (S.D.N.Y. 2010).

Supplemental Rule E(2)(a) requires that the government set forth its claims in the complaint "with such particularity that the defendant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supplemental Rule G(2)(f) further requires the government to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Under the Civil Action Forfeiture Act of 2000 ("CAFRA"), codified in part at 18 U.S.C. § 983, at trial, the government must prove "by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); *see also United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 368 (S.D.N.Y. 2008). Accordingly, the government's complaint must "assert specific facts supporting an inference that the property is subject to forfeiture." *$22,173.00 in U.S. Currency*, 716 F. Supp. 2d at 248 (collecting cases).

The government, however, is not required to allege in the complaint all of the facts and evidence at its disposal. *Id.* at 248-49. At the pleading stage, "it is sufficient for the government to simply plead enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation." *Id.* (the issue is "one of pleading, not proof at trial"). Courts may not dismiss a civil forfeiture complaint "on the ground that the [g]overnment did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

In determining a Rule 12(b)(6) motion, courts must accept all the factual allegations in the complaint as true and must draw all inferences from those allegations in the light most favorable to the government. *See, e.g., TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d at 369. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA*, 758 F.3d at 505. On a Rule 12(b)(6) motion to dismiss, courts may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which they may take judicial notice. *See, e.g., Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Faconti v. Potter*, 242 F. App'x 775, 777 (2d Cir. 2007).

## DISCUSSION

### I. The Claimant's Standing

Standing is "the threshold question in every federal case" and determines "the power of the court to entertain the suit." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999); *see also* Supplemental Rule G(8)(C)(ii)(A) (motion to strike for lack of standing "must be decided before any motion by the claimant to dismiss the action"). Accordingly, I address first the government's contention that the claimant lacks standing to contest $250,000 of the Defendant Funds. (ECF No. 23, at 15-18.)

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *Cambio Exacto, S.A.*, 166 F.3d at 526. Statutory standing is satisfied when the claimant files a verified claim in accordance with Supplemental Rule G(5). *Id.*; *see also Bacchus v. United States*, No. 12 CV 5104 DLI JMA,

2014 WL 2558800, at *2 (E.D.N.Y. June 6, 2014). To demonstrate Article III standing, the claimant must allege a "distinct and palpable injury" to herself "that is the direct result of the "putatively illegal conduct of the [adverse party] . . . and likely to be redressed by the requested relief." *Id.* at 527 (internal citations and quotations omitted). "[T]he claimant need not prove the full merits of [her] underlying claim" in order to establish standing. *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 78 (2d Cir. 2002). "All that needs to be shown is a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court." *Id.* (citing *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1157 (2d Cir. 1994)).

Here, the claimant has both statutory and Article III standing to contest the forfeiture of the Defendant Funds. The government does not deny that the claimant met the procedural requirements of Supplemental Rule G(5). The record also shows that the claimant has sufficiently demonstrated a "facially colorable interest" in the Defendant Funds. The claimant asserted, in a sworn statement, that she "possessed $250,000 of the Defendant [Funds] as a bailee to Wayne Zhou," that he "entrusted [the funds to her] to help him purchase local real estate," and that she personally owned $22,000 of the Defendant Funds.[3] (Statement of Claim, ECF No. 11.) *See United States v. U.S. Currency in the Sum of Ninety Seven Thousand Two Hundred Fifty-Three Dollars ($97,253.00), More or Less*, No. 95-CV-3982 (JG), 1999 WL 458155, at *6 (E.D.N.Y. June 30, 1999) (in civil forfeiture actions, a bailee of seized currency "possesses a sufficient stake in that currency to have Article III standing"); *accord United States v. Portrait of*

---

[3] In determining standing, a court is permitted to refer to evidence outside of the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it . . . In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

*Wally, A Painting By Egon Schiele*, No. 99 CIV. 9940 (MBM), 2002 WL 553532, at *6 (S.D.N.Y. Apr. 12, 2002). In addition, the government's own complaint alleges that it seized the Defendant Funds from inside the claimant's home. *See United States v. $421,090.00 in U.S. Currency*, No. 11-CV-00341 JG, 2011 WL 3235632, at *4 (E.D.N.Y. July 27, 2011) (claimant's asserted interest in the money, which was corroborated in part by the government's own allegation that the money was found in his physical custody, was sufficient to show standing). Last, the government does not dispute that the claimant has standing to contest the forfeiture of $22,000 of the Defendant Funds; she has asserted a "distinct and palpable" injury to herself that is the direct result of the government's allegedly unlawful forfeiture, and the injury would be redressed by a successful challenge to the forfeiture. (*See* ECF No. 23, at 15-16 (the government contesting the claimant's standing only as to $250,000 of the Defendant Funds)). Here, because "a single set of funds was seized together, and the propriety of forfeiting those funds is the subject of a single controversy," the claimant's "colorable ownership interest in even a portion of the funds is sufficient to establish a concrete interest in the proceedings as a whole." *421,090.00 in U.S. Currency*, 2011 WL 3235632, at *5.[4] The claimant therefore has standing to proceed with this motion.

## II. Sufficiency of the Government's Complaint

---

[4] The government urges the court to strike the claimant's motion for lack of standing based solely on a violation of Supplemental Rule G(6). (ECF No. 23, at 15-18.) Specifically, the government argues that the claimant lacks standing because she failed to provide sufficient supplemental answers to Special Interrogatories Nos. 3-5, even after I ordered her to do so. Putting aside the adequacy of the claimant's supplemental responses, the record shows that she has a facially colorable interest in the Defendant Funds. Thus, I will not strike the claimant's motion because of an alleged failure to respond to Rule G(6) interrogatories. *See, e.g.*, Advisory Committee Notes to Rule G(8) ("Not every failure to respond to subdivision (6) interrogatories warrants an order striking the claim."); *United States v. Real Prop. Located at 17 Coon Creek Rd., Hawkins Bar California, Trinity Cty.*, 787 F.3d 968, 977 (9th Cir. 2015) (explaining that "where a claimant's Article III and statutory standing are not reasonably in dispute, his failure to respond to Rule G(6) special interrogatories does not, in itself, warrant striking his claim.").

The government asserts two theories of forfeiture against the Defendant Funds. First, it claims that the money is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property "involved in a transaction or attempted transaction violation of section [1956, the money laundering statute], or any property traceable to such property." 18 U.S.C. § 981(a)(1). Second, the government contends that the money is forfeitable pursuant to 21 U.S.C. § 881(a)(6), as proceeds traceable to an exchange for narcotics. For the following reasons, I find that the government sufficiently alleged facts to support the forfeitability of the Defendant Funds under both statutes. Thus, I deny the claimant's motion to dismiss in its entirety.[5]

### a. Forfeiture Claim Under 18 U.S.C. § 981(a)(1)(A)

The basis for the government's forfeiture claim under 18 U.S.C. § 981(a)(1)(A) is a violation of the money laundering statute under 18 U.S.C. § 1956(a)(1). To prove forfeiture under this section, the government must "establish [] a substantial connection between the property and the [money laundering] offense." 18 U.S.C. § 983(c). "Under the substantial connection test, the property either must be used or intended to be used to commit a crime, or must facilitate the commission of a crime . . . [a]t minimum, the property must have more than an incidental or fortuitous connection to criminal activity.'" *United States v. One Red 2003 Hummer H2 VIN: 5GRGN23U93H118675*, 234 F. Supp. 3d 415, 421 (W.D.N.Y. 2017).

Based on the first claim for relief (ECF No. 1, ¶ 40), the government must allege that the claimant "(1) knowing that the property involved in a financial transaction represented the

---

[5] The claimant's motion focuses primarily on dismissing the complaint against $22,000 of the Defendant Funds. However, the claimant's argument—that the $22,000 constitutes legitimate rent income—goes towards the substantive merits of the government's forfeiture claims, and is more appropriate on a motion for summary judgment. Accordingly, I focus my analysis only on the legal sufficiency of the complaint as a whole. I do not consider evidence outside of the pleadings regarding the provenance of the $22,000. *See* F.R.C.P. 12(d); *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (because a Rule 12(b)(6) motion challenges the "legal feasibility of a complaint," courts will "not look beyond facts stated on the face of the complaint . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken") (internal quotations omitted).

proceeds of some form of unlawful activity, (2) conducted or attempted to conduct a financial transaction (3) which in fact involved the proceeds of that unlawful activity, (4) either (a) with the intent to promote the carrying on of that unlawful activity or (b) with the knowledge that the transaction was designed at least in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity."[6] *United States v. Gotti*, 459 F.3d 296, 334 (2d Cir. 2006); *In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 558-59 (S.D.N.Y. 2011).

The claimant argues that this claim should be dismissed because the government did not plead any facts to show that she "conducted a financial transaction." (ECF No, 15-1, at 8-10.) Specifically, she contends that her conduct constituted a "non-transaction" because all she did was retrieve the money, take it home, and hide it in her nightstand and in the light fixture in her bathroom ceiling; she did not deposit the money in a bank or attempt to launder the funds through a financial institution. (ECF No. 15-1, at 9-10.) I reject that claim. The government sufficiently pled facts to show that the claimant conducted a transaction within the meaning of the money laundering statute. The plain language of Section 1956 defines the term "conducts" to include "participating in initiating, or conducting a transaction," and the term "transaction" to include "transfer[s] [or] deliver[ies]." 18 U.S.C. § 1956(c)(2)-(3); *see also Gotti*, 459 F.3d at 335 (the statutory text of Section 1956 indicates that the "mere receipt of funds *does* constitute the conducting of a transaction pursuant to 18 U.S.C. § 1956(c)(2)-(3).") (emphasis in original).

---

[6] Section 1956(a) provides that "(1) [w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—(A)(i) with the intent to promote the carrying on of specified unlawful activity; . . . (B) knowing that the transaction is designed in whole or in part—(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both." 18 U.S.C. § 1956(a).

Thus, the claimant's acceptance of the Defendant Funds is sufficient to show that she "participated in the conclusion of that transfer or delivery, and ... conducted a transaction." *Gotti*, 459 F.3d at 335. Moreover, there is no doubt that the government sufficiently pled the "financial" nature of the transaction at issue as the drug trafficking and money laundering offenses alleged in this case affect both interstate and foreign commerce.[7] *See, e.g., United States v. Goodwin*, 141 F.3d 394, 402 (2d Cir. 1997) (narcotics trafficking and money laundering satisfied the interstate commerce element of Section 1956 because they are "activities which, in the aggregate, will undoubtedly affect interstate commerce").

I also reject the claimant's arguments that the government did not plead facts establishing scienter or any facts linking the Defendant Funds to a specified unlawful activity. (*See* ECF No. 15-1, at 9-10.) To satisfy its burden for scienter under the money laundering statute, the government must plead facts sufficient to support a reasonable belief that the claimant "knowingly engaged in transactions involving criminally derived property." *United States v. Prevezon Holdings LTD.*, 122 F. Supp. 3d 57, 74 (S.D.N.Y. 2015); *see also United States v. Tillman*, 419 Fed. Appx. 110, 111–12 (2d Cir. 2011) (summary order) ("The money laundering statute 'reach[es] a person who knows that [s]he is dealing with the proceeds of some crime[,] even if [s]he does not know precisely which crime.'"). "Knowledge may be shown by proof of willful blindness or conscious avoidance." *Prevezon Holdings LTD.*, 122 F. Supp. 3d at 74 (citing *United States v. Nektalov*, 461 F.3d 309, 314 (2d Cir. 2006)). Here, the government's allegations that the claimant told officers that she went to Flushing to meet "a man she had never

---

[7] Section 1956 defines the term "financial transaction" as "(A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree. 18 U.S.C. § 1956(c)(4).

before met and whose name she did not know" and accepted $272,000 in cash from him, with no questions asked, are enough to establish *scienter* at the pleading stage. *See, e.g., Tillman*, 419 F. App'x at 112; *Prevezon Holdings LTD.*, 122 F. Supp. 3d at 74 (S.D.N.Y. 2015). Moreover, as discussed in further detail below, the government sufficiently pled facts to support a reasonable inference that the Defendant Funds are substantially connected to narcotics trafficking.

Accordingly, I deny the claimant's motion to dismiss the government's forfeiture claim under 18 U.S.C. § 981(a)(1)(A).[8]

### b. Forfeiture Claim Under 21 U.S.C. § 881(a)(6)

Pursuant to 21 U.S.C. § 881(a)(6), "money that is furnished by any person in exchange for a controlled substance[,] all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of [the Controlled Substances Act]" is subject to forfeiture. Under this forfeiture theory, the government does not need to prove "a substantial connection between the property and any specific drug transaction." *United States v. U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars ($185,000)*, 455 F. Supp. 2d 145, 149 (E.D.N.Y. 2006); *accord United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 250 (S.D.N.Y. 2010). It is sufficient for the government to demonstrate, "based on a totality of the circumstances, that the property is substantially connected to narcotics trafficking." *U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars ($185,000)*, 455 F. Supp. 2d at 149; *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d at 250.

---

[8] The claimant also argues that the government failed to state a claim because it did not allege that she conducted the transaction at issue with the aim of concealment or disguise. (ECF No. 24, at 11.) Because the claimant raised this argument for the first time in her reply brief, I do not address it. *See Garcia v. Alk*, No. 09-CV-2045 DLI LB, 2015 WL 1469294, at *8 (E.D.N.Y. Mar. 30, 2015) (arguments raised for the first time in a reply brief will not be addressed because the adverse party had no opportunity to respond to those new arguments).

Here, the government sufficiently pled a substantial connection between the Defendant Funds and narcotics trafficking. Law enforcement agents seized $272,000 in U.S. currency, packaged in denominations of $50 and $100, from the claimant's bedroom and from a bathroom light fixture. The amount of money, the way in which it was bundled, and the location of at least some of it—a bathroom light fixture—is suggestive of illegality. Moreover, the fact that the claimant apparently moved some of the money to the light fixture after the probation officers' initial visit, suggests consciousness of guilt. *See United States v. $32,507.00 in U.S. Currency*, No. 14 CIV. 5118 CM, 2014 WL 4626005, at *2 (S.D.N.Y. Sept. 16, 2014) ("While the presence of large sums of cash is "not *per se* evidence of drug-related activity, it is suggestive of involvement in illegal activity more generally."). The additional allegations—the presence of narcotics on the money and in the nightstand, federal tax returns and bank records showing both a lack of significant legitimate income and wire transfers of substantial sums of money to and from China, and the claimant's explanation that she got the money from a total stranger at the direction of another person—support a reasonable belief that the government will be able to prove a substantial connection between the Defendant Funds and the drug trade.[9] *See United States v. $32,507.00 in U.S. Currency*, No. 14 CIV. 5118 CM, 2014 WL 4626005, at *2 (S.D.N.Y. Sept. 16, 2014) (facts pled in the complaint—the seizure of $32,507 from a car trunk, the packaging of the cash in bundles of small bills, the detection of narcotics by a drug-sniffing dog, and the parties' shifting explanations for the currency— "raise a reasonable inference of a

---

[9] The government's failure to specify additional details—whether the purported drug trafficking occurred in the United States, what narcotics the government suspects were dealt, and the names of purchasers—is not, as the claimant argues, a reason to dismiss. (ECF No. 15-1, at 12.) There is no requirement that the government allege *all* of the facts and evidence at its disposal in the complaint, or that it prove its case at the pleading stage. As CAFRA makes clear, "no complaint may be dismissed on the ground that the [g]overnment did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D). The government may rely on discovery to develop the specifics of its forfeiture theories. *See, e.g., United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 253 (S.D.N.Y. 2010).

drug connection" and are sufficient to withstand a motion to dismiss). *See also United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 251 (S.D.N.Y. 2010); *United States v. U.S. Currency in Amount of Two Hundred Forty Eight Thousand Four Hundred Thirty Dollars*, No. CV-01-5036(SJF)(ASC), 2004 WL 958010, at *5 (E.D.N.Y. Apr. 14, 2004). Accordingly, the claimant's motion to dismiss the second claim for relief is denied.[10]

## CONCLUSION

For the foregoing reasons, the claimant's motion to dismiss the complaint [15] is denied.

**SO ORDERED.**

s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
February 16, 2018

---

[10] The claimant also moves to dismiss the complaint on public policy grounds, arguing that the complaint should be dismissed because the civil forfeiture regime "in general" violates her due process rights under the Fifth and Fourteenth Amendments. (ECF No. 15-1, at 14-16.) Because the claimant does not identify any specific procedural or substantive due process violations in connection with this forfeiture action, I will not address this argument.